# EXHIBIT A



ADP, INC.
Dealer Services Group
1950 Hassell Road
Hoffman Estates, Illinois 60169-6308

TO BE PREPARED AND
SIGNED IN DUPLICATE

# MASTER SERVICES AGREEMENT

No. 68059017

Client: BMW-MINI OF TOWSON

Address: 700 KENILWORTH DR.

City: TOWSON    State: MD    Zip Code: 21204

1. **SCOPE OF AGREEMENT.**

    A. The Dealer Services Group of ADP, Inc. ("ADP") agrees to provide Client and Client agrees to obtain from ADP, in accordance with the terms and conditions of this Agreement and Schedules, the following:

    (i) the services described in the Schedules (the "Services");

    (ii) licenses and/or sublicenses to the application software (the "Application Programs"), and to the custom programming application software referred to in Paragraph 6(b) below (the "Special Programs"), all as described in the Schedules;

    (iii) the software support services to the Application Programs and the Special Programs covered by Paragraph 7 below and as may be further described in the Schedules (collectively, the "Support Services");

    (iv) the equipment listed in the Schedules (the "Equipment") and the grant of licenses and/or sublicenses to the operating software for such Equipment, as described in the Schedules (the "Operating Programs"); and

    (v) the maintenance services for the Equipment covered by Paragraph 12 below and as may be further described in the Schedules (collectively, the "Maintenance Services").

    B. ADP may, from time to time during the term of this Agreement, provide Client, at Client's request, with services, application software, custom programming application software, operating software, software support services, equipment and equipment maintenance services which are then being provided by ADP and are not specifically covered by the Schedules hereto. The terms "Services", "Application Programs", "Special Programs", and "Operating Programs", "Support Services", "Equipment" and "Maintenance Services" shall automatically be amended from time to time to include all such additional services, application software, custom programming application software, operating software, software support services, equipment and equipment maintenance services, as the case may be, which are provided by ADP to Client. The terms Application Programs, Special Programs, and Operating Programs are collectively referred to as the "Software".

2. **TERM OF AGREEMENT.**

    The term of this Agreement shall be for the period commencing the date this Agreement has been signed by an authorized officer of both ADP and Client and continuing until all Schedules hereto have completely terminated. The term of each Schedule shall be for the period indicated therein and shall continue thereafter on a month-to-month basis until terminated by either party on at least thirty (30) days notice. Client's and ADP's continuing obligations under this Agreement and the Schedules hereto (including, without limitation, those relating to Client's payment of the charges referred to in Paragraph 3 below, and to the "ADP Products," the "Confidential Information" and the "Client Files" (all as hereinafter defined)) shall survive the termination of this Agreement and the Schedules hereto.

3. **CHARGES.**

    A. The initial charges for the Services, Software, Support Services, Equipment and Maintenance Services shall be as set forth in the applicable Schedules. The charges for any services, applications software, custom programming applications software, operating software, software support services, equipment and equipment maintenance services provided by ADP to Client which are not listed in the Schedules shall be mutually agreed to by ADP and Client and shall be in addition to the charges listed in the Schedules.

    B. The charges for the Support Services and Maintenance Services listed in the Schedules may be changed by ADP at any time and from time to time after the applicable initial 12 month billing period upon at least 30 days prior written notice to Client. The charges for the Services, Software and Equipment listed in the Schedules, and for any services, application software, custom programming, operating software, software support services, equipment and equipment maintenance services provided by ADP to Client which are not listed in the Schedules, may be changed by ADP at any time and from time to time upon at least 30 days prior written notice to Client.

MSA US 08/05/2008

© 2008 ADP, Inc.

- C. Client will be invoiced for all freight charges and all forms, supplies and consumable items provided by ADP for utilization of all ADP services at ADP's then current prices.
- D. There shall be added to all charges invoiced Client pursuant to this Agreement and the Schedules hereto amounts equal to any and all applicable taxes, exclusive of taxes based on ADP's net income.
- E. Client, by using any of the Services, Software, Support Services, Equipment and Maintenance Services agrees to pay, within 10 days after the date of the applicable invoice from ADP, the then applicable charges for the Services, Software, Support Services, Equipment and Maintenance Services covered thereby. If Client fails to pay any amounts due under this Agreement and the Schedules hereto, Client shall, upon demand, pay interest at the rate of 1 1/2% per month (but in no event more than the highest interest rate allowable by law) on such delinquent amounts from the due date until the date of payment.
- F. Any deposit set forth in a Schedule shall be paid by Client to ADP concurrently with Client's execution of the applicable Schedule. All deposits are non-refundable. In the case that Client is financing through an ADP affiliated financing entity, deposits to be applied against Equipment purchases will be credited to Client's lease account with an ADP affiliated financing entity. In the case of payment in full by Client or by a third party lender, deposits to be applied against Equipment purchases will be first credited to Client's ADP account with any excess refunded to Client. Deposits to be applied to Services which are licensed or purchased by Client but are not approved for installation by Client shall be retained by ADP and shall be applied against ADP's losses. ADP may, at its option, apply Client's deposit balance to Client's final invoice relating to any terminated Service. Other types of deposits may be required by ADP as indicated by the applicable Schedules.

4. **USE OF THE SERVICES AND TRAINING.**
   - A. Client agrees that it will use the Services, Software and Equipment in accordance with such reasonable policies as may be established by ADP from time to time as set forth in any materials furnished by ADP to Client. Client assumes exclusive responsibility for its use of the Services, Software and Equipment.
   - B. Client agrees that, except as otherwise permitted by ADP in writing, Client will use the Services and the Software only for its own internal business purposes and will not sell or otherwise provide, directly or indirectly, any of the Services or the Software, or any portion thereof, to any third party.
   - C. ADP shall provide Client with training on using the Services, Software and Equipment in accordance with, and to the extent provided by, ADP's then prevailing practices and as may be further described in the Schedules. ADP's charges for such training are set forth in the applicable Schedules or are included in initial licensing fees.

5. **COMMUNICATION LINES.**
   Client shall be exclusively responsible for and shall pay all installation, monthly and other charges relating to the installation and use of dedicated communications lines required by ADP in connection with providing Client with the Services, Software, Support Services and Maintenance Services. Client shall be responsible for the reliability or continued availability of such communications lines. Client will not remove, disable, disconnect, or otherwise prevent ADP from accessing and using, such communications lines. Client acknowledges that such communications lines are needed for ADP to provide Support Services and Maintenance Services and to monitor Client's correct and authorized use of the Services and the Software. Client acknowledges that the Services, Software, and Equipment may have self-monitoring functions which result in phone calls to ADP and that Client is responsible for such phone charges.

6. **SOFTWARE.**
   - A. Client acknowledges that is it a licensee and/or sublicensee of ADP of the various Application Programs, Special Programs and Operating Programs contained in the Software. Client accepts such licenses and/or sublicenses, as the case may be, from ADP for the Software upon the terms and conditions set forth in this Agreement.
   - B. Any Special Programs requested by Client will be provided by ADP at charges, terms and conditions to be mutually agreed to by ADP and Client as set forth on the Schedules. ADP reserves the right to determine if it will provide any such Special Programs programming. All Special Programs shall be the exclusive proprietary property of ADP. ADP may independently develop software similar to the Special Programs for any purpose.
   - C. The licenses and/or sublicenses for the Software granted by ADP to Client hereunder convey personal, non-exclusive, non-transferable rights and licenses and/or sublicenses, as the case may be, to Client to use the Software only at the Sites indicated on the Schedules in conjunction with the Services and/or the Equipment.
   - D. All Software (including the magnetic or other physical media on which it is originally or subsequently recorded or fixed) will be returned by Client to ADP or will be completely deleted, erased or otherwise destroyed by Client, in accordance with ADP's instructions, promptly after the termination of the Schedule as to which it relates.

7. **SUPPORT SERVICES.**
   ADP, or its designee, will provide Support Services to keep the Software operating in good working order through the methods described below for the Software licensed hereunder so long as Client: (i) makes timely payment of all applicable fees as invoiced; (ii) maintains an operating environment conforming to ADP's then-current published specifications; (iii) allows ADP complete and safe access to the Software; and (iv) is not otherwise in breach of this Agreement:
   - A. ADP will provide consulting Support Services assisting client in the use of the Software licensed hereunder including, but not limited to, services provided by ADP at Client's facility, travel time to and from Client's facility and consulting time via telephone or other modes of communication. Support Services necessary due to Client personnel failure to attend training will be provided by ADP on a best-efforts basis at ADP's then-current charges therefore. There is a three hour minimum charge for each visit to Client's facility.

    B.    ADP may provide certain ADP-designated improvements, enhancements and updates, which are made available by ADP to its Clients generally (the "Updates"), to the original copies of the Software licensed hereunder. Client agrees that ADP may charge Client implementation, development or other fees as a condition to the receipt by Client of certain Updates. The Updates will be deemed to be part of the Software and will be delivered to Client by ADP. Except for Updates that ADP designates as optional, and which Client declines, Client will install all delivered Updates within 45 days of receipt from ADP or ADP will have no further obligation to provide to Client Updates or support for the affected Software, and ADP may, at its option, terminate the license for the affected Software. Client acknowledges that Updates may require the use of additional computing capacity or upgrades to the Equipment. In such case, ADP's sole and exclusive responsibility will be to make the necessary additional computing capacity and/or upgrades available to Client at ADP's then-prevailing charges. ADP reserves the right to designate the availability and use of Software, and Updates thereto, with specific ADP system configurations.

    C.    Any Support Services for Special Programs requested by Client including, without limitation, any changes needed to Special Programs to interface and/or operate with any new release or enhancement to ADP's standard Applications Programs and file conversions, will be provided at ADP's discretion at ADP's then current charges therefor.

    D.    Client may request that ADP, from time to time hereunder and for ADP's then prevailing charges therefor, approve software owned by Client or licensed by Client from a third party which is not included in the Software (the "Client Software"), for use in conjunction with the Services, Software and/or Equipment. ADP shall perform such procedures (as set forth in Paragraph 13 below), if any, as are, in ADP's sole and absolute discretion, necessary for it to determine whether it can give Client the approval for the Client Software sought by Client pursuant to this Paragraph 7(D). ADP will not provide Support Services for the Client Software; any and all support for such Client Software shall be Client's responsibility. Client will not use the Client Software in conjunction with the Services, Software and/or Equipment prior to complying with the steps set forth in Paragraph 13 below.

    E.    If Client accesses third party supplied services through an ADP Service and the third party modifies its requirements for ADP access, ADP may, notwithstanding anything to the contrary set forth herein or in the Schedules, discontinue Client's use of the affected Services; and such action by ADP shall be in addition to its other remedies under Paragraph 18(A) below.

## 8. OWNERSHIP, USE AND CONFIDENTIALITY OF ADP PRODUCTS.

    A.    Client acknowledges that the Software, the data bases which are part of the Services, and related materials, and all copyrights, patents, trade secrets and other intellectual and proprietary rights therein and thereto (collectively the "ADP Products") are and shall remain the exclusive and confidential property of ADP or the third parties for whom ADP is acting as agent or from whom ADP has obtained the right to use the ADP Products.

    B.    Client may use the ADP Products only in conjunction with the Services, Software and Equipment. Client shall not copy, in whole or in part, the ADP Products or related documentation, whether in the form of computer media, printed or in any other form; provided, however, that Client may make an appropriate number of copies of the ADP Products for back-up purposes only. Client shall not make any alteration, change or modification to any of the ADP Products without ADP's prior written consent in each instance. CLIENT MAY NOT RECOMPILE, DECOMPILE, DISASSEMBLE, REVERSE ENGINEER, OR MAKE OR DISTRIBUTE ANY OTHER FORM OF, OR ANY DERIVATIVE WORK FROM, THE ADP PRODUCTS (INCLUDING THE SOFTWARE).

    C.    Client shall treat as confidential and will not disclose or otherwise make available any of the ADP Products (including, without limitation, screen displays or user documentation) or any trade secrets, processes, proprietary data, information or documentation related thereto (collectively the "Confidential Information"), in any form, to any person other than employees and agents of Client with a need-to-know. Client will instruct its employees and agents who have access to the ADP Products and the Confidential Information to keep the same confidential, by using the same care and discretion that Client uses with respect to its own confidential property and trade secrets. Client shall not allow access to any ADP Products by any third parties. Upon the termination of a Schedule for any reason, Client shall return to ADP any and all copies of the ADP Products and the Confidential Information which are in its possession relating to such terminated Schedule.

## 9. CONFIDENTIALITY OF CLIENT FILES; FILE SECURITY; LIMITED LICENSE TO CLIENT FILES.

    A.    Any Client file or other information provided by Client to ADP for use with the Services and identified in writing as confidential (collectively the "Client Files") shall remain the exclusive and confidential property of Client. Except to the limited extent set forth in Paragraph 9(D) below, ADP shall treat as confidential and will not disclose or otherwise make available any Client Files to any person other than employees of ADP with a need-to-know. ADP will instruct its employees who have access to the Client Files to keep the same confidential by using the same care and discretion that ADP uses with respect to its own confidential property and trade secrets.

    B.    ADP will provide reasonable security provisions to ensure that access to the Client Files is available only to Client. ADP reserves the right to issue and change regulations and procedures from time to time to improve file security.

    C.    ADP will take reasonable precautions to prevent the loss of or alteration to the Client Files retained by ADP, but ADP cannot guarantee against any such loss or alteration. Accordingly, Client will keep copies of the source documents of the information delivered to ADP and will maintain procedures external to the ADP system for the identification of such losses and for the reconstruction of lost or altered Client Files, to the extent deemed necessary by Client.

    D.    Notwithstanding the foregoing, Client grants ADP the right and license to access and use the Client Files and to distribute such Client Files to third parties in statistical and/or compilation forms in connection with other ADP services. Client acknowledges that such statistics and/or compilations (which are not identifiable to Client) will be the property of ADP. ADP will obtain Client's authorization to use and distribute identifiable Client Files. Certain Services licensed by Client entail disclosures of identifiable Client File information; Client's use of such Services shall be deemed to be Client's authorization to use and distribute identifiable Client Files in relation to such Services.

10. **EQUIPMENT - CONFIGURATION INFORMATION; INSTALLATION AND ENVIRONMENTAL SPECIFICATIONS.**

   A. Client will provide ADP with complete and accurate information regarding Client business volumes and computer storage requirements for use with the System Configurator Schedule for the Equipment purchased from ADP pursuant hereto. ADP will not be responsible for configuration errors due to inaccuracies and/or omissions in the information supplied by Client and for any resulting errors in the amount or capacity of Equipment sold to Client.

   B. Client shall provide a suitable installation environment for the Equipment as described in ADP's environmental specifications set forth in the Schedules (the "Environmental Specifications"). Client shall provide and install all wiring and cabling required for installation of the Equipment, and shall install all electrical and other utilities specified in the Environmental Specifications. The Equipment shall be installed and placed in good working order by Client, ADP or ADP's designee, as indicated in the Schedules. Client will at all times maintain the location at which the Equipment is installed in accordance with the Environmental Specifications.

11. **EQUIPMENT - RISK OF LOSS; OWNERSHIP.**

   A. Client acknowledges that the Equipment provided hereunder may possess characteristics which limit the useable capacity of such Equipment. Client acknowledges and agrees that it has purchased, and is authorized to use, only such authorized useable capacity of the Equipment as is indicated on the applicable Schedules. Client expressly agrees that: (i) it will not cause or permit any alteration of any of the Equipment such that the useable capacity will be increased beyond its authorized usable capacity; and (ii) it will not use any portion of the capacity of the Equipment in excess of its authorized, useable capacity without paying ADP the applicable fees for the desired increase in useable capacity. Ownership of the unused capacity in the Equipment shall remain with ADP.

   B. Title to the portion of the Equipment purchased by Client shall pass to Client at the point of shipment; title to any portion of the Equipment which is not purchased by Client pursuant to Paragraph 11(A) above shall remain with ADP. Client shall have the option of obtaining additional equipment (in addition to the Equipment) from any third party; provided that, such equipment; (i) must be compatible to the Equipment and have complied with the procedures set forth in Paragraph 13 below (for which Client has paid ADP its then prevailing charges therefore); and (ii) shall be maintained in the manner provided for in Paragraph 12 below.

   C. Client shall assume all risk of loss or damage to any Equipment while in Client's possession or control. No loss, theft or damage to the Equipment after the passage of title to Client shall relieve Client of its obligations to pay the charges due, or perform any of its other obligations, under this Agreement.

   D. ADP reserves a purchase money security interest in any Equipment in the amount of the unpaid balance of the purchase price until payment in full of such purchase price. A financing statement under the Uniform Commercial Code may be filed with appropriate public authorities and Client agrees to sign any forms presented to it which are necessary to protect ADP's security interest therein.

12. **EQUIPMENT MAINTENANCE SERVICES.**

   A. ADP, or its designee, shall provide Maintenance Services for the Equipment and additional equipment referred to in Paragraph 11(B) above (to the extent set forth in the Schedules). Any and all maintenance for Equipment and additional equipment not maintained by ADP, or its designee, will be Client's responsibility subject to the provision of Paragraph 12(F) below.

   B. For the Equipment and additional equipment it is maintaining, ADP, or its designee, shall, at ADP's option, provide normal remedial Maintenance Services on-site or by telephone during the hours such remedial Maintenance Services are then generally provided by ADP to its clients for that ADP service region. ADP may, at its option, also provide Equipment swap-out services in lieu of on-call remedial maintenance services. In such event, Client agrees to follow ADP's then-prevailing swap-out maintenance procedures including, without limitation, returning all replaced parts, freight prepaid, within 15 days after receipt of the replacement parts or pay ADP's then-current late charges. Preventive Maintenance Services shall be provided as determined necessary by ADP, or its designee, and shall be performed during the same hours as on-site remedial Maintenance Services are provided.

   C. Maintenance Services include replacement of all unserviceable parts. Removed parts become the property of ADP. Replaced parts may be new or refurbished.

   D. Maintenance Services do not include (and ADP shall charge Client ADP's then prevailing normal charges for providing):

   (i) Electrical work external to the Equipment and additional equipment.

   (ii) Maintenance of accessories, attachments, or other devices not covered by the Schedules.

   (iii) Furnishing platens, ribbons, tapes, diskettes, other consumable items, supplies or accessories, painting or refinishing, making specification changes or performing services connected with installation, removal or relocation of Equipment and additional equipment, or adding or removing accessories, attachments or other devices unless specifically agreed to.

   (iv) Such other services which are impractical for ADP, or its designee, to render because of alterations, not approved by ADP, to the Equipment and additional equipment.

   (v) Repair of any Equipment or additional equipment problem caused by non-ADP representatives performing maintenance or repair of such Equipment or additional equipment, unless approved by ADP.

- (vi) Repair of damage resulting from (a) fire, theft, disaster, catastrophe or acts of God, transportation, neglect or misuse, power failure, power spikes (including, without limitation, lightening spikes and power surges) communications line or equipment failure, (b) failure of foreign interconnect equipment, (c) use of the Equipment or additional equipment for purposes other than for which it was designed, (d) alterations or attachments to, or the use of accessories or supplies not suitable for, the Equipment or additional equipment, (e) operational errors, fault or negligence of the Client or, (f) causes other than ordinary wear and tear.

- (vii) Repair of damage or increase in repair service time caused by non-compliance with the Environmental Specifications, or Client's improper use, management or supervision of the Equipment or additional equipment (including, without limitation, the use of supplies, disc packs, diskettes, tapes and tape cartridges not designated in writing by ADP as suitable for use with the Equipment or additional equipment).

- (viii) Repair of damage resulting from problems in the Software if, without the approval of ADP, (a) the Software has been altered in any way not permitted by Paragraph 7 above, or (b) software, other than the Software and other software previously approved by ADP in accordance with the provisions set forth in Paragraph 13 below, has been installed on the Equipment or the additional equipment.

E. Client shall permit ADP, or its designee, to have complete access to the Equipment and the additional equipment being maintained by it during normal business hours.

F. Notwithstanding the foregoing, in the case that ADP, or its designee, is not supplying Maintenance Services:

- (i) Due to the proprietary nature of the Services and Software, Client will not allow access by any third party to the Services and Software,

- (ii) Client may request that ADP provide Maintenance Services on a time and materials basis from time to time. ADP will do so, at its discretion, at ADP's then-current rates and under its then-current policies,

- (iii) Client will pay ADP's then-current recertification fees to place non-maintained Equipment and additional equipment under Maintenance Services, as well as any time and materials charges for services required to bring the non-maintained Equipment and additional equipment up to ADP standards for Maintenance Services.

## 13. NON-ADP PROVIDED SOFTWARE AND EQUIPMENT.

A. When Client requests ADP to give it the approval referred to in Paragraph 7(D) or 11(B) above, ADP will promptly notify Client if ADP reasonably believes (after being advised of Client's intentions and having reasonable time to review, to the extent it determines necessary in its sole and absolute discretion, the likely effect of the proposed additional Client Software or equipment) that such Client Software or equipment (collectively, the "Third Party Products") will degrade the performance of the Services, Software and/or Equipment below their respective specifications and/or will increase the Support Services and/or Maintenance Services which ADP, or its designee, will have to perform on the Software or the Equipment. Client will, upon request demonstrate to ADP that degradation in Services, Software and/or Equipment performance or increase in Support Services or Maintenance Services is unlikely. If ADP determines that such degradation in Services, Software and/or Equipment performance or increase in Support Services or Maintenance Services is still likely, Client shall have the option of:

- (i) satisfying ADP, in accordance with criteria to be mutually agreed to by ADP and Client, that the performance of the Services, Software and Equipment will not be degraded, and/or the Support Services or Maintenance Services required to be performed by ADP, or its designee, will not be increased by such additional Third Party Products; or

- (ii) as a condition of receiving ADP's approval for the use of the Third Party Products in question, agreeing with ADP as to appropriate changes in ADP's warranties set forth in Paragraph 14 below, and in ADP's Support Services under Paragraph 7 above and/or Maintenance Services under Paragraph 12 above (and ADP's charges therefor), in order to enable ADP not be in breach of its obligations under Paragraph 7, 12 and 14 hereof.

B. Client agrees that ADP shall not be responsible, now or in the future, for the installation, Maintenance Service or Support Services for any Third Party Products or for any modifications to the Services, Software or Equipment necessary to correct or place any Third Party Products in good working order. Client further acknowledges that use of any Third Party Products with the Services, Software or Equipment involves potential risks that may result in system degradation and/or may adversely affect the performance of the Services, Software or Equipment. ADP shall be under no obligation now or in the future to correct any such problems, and ADP shall not have any obligation or responsibility to reconstruct any Client Files, data or programs which may be lost or damaged as a result of Client's use of Third Party Products. If the installation or use of Third Party Products has adverse effects on any Services, Software or Equipment, or results in any damages or destruction of ADP or Client data, Client agrees to immediately disconnect or remove the Third Party Products upon reasonable prior notice from ADP.

14. **WARRANTY.**

    A. ADP warrants that the Services and the Software will conform to their respective functional and technical specifications. Such specifications are subject to amendment, from time to time, by ADP in which case the Services and Software will conform to their modified respective functional and technical specifications. This warranty shall not extend to Software which has been altered, changed, or modified in any way not permitted by the provisions of this Agreement.

    B. ADP represents and warrants that the Equipment and the additional equipment which is maintained by ADP, or its designee, will be in good working order to the extent provided by Paragraph 12 above during the period it is maintained by ADP hereunder. This warranty shall not extend to Equipment and/or additional equipment that has been subjected to misuse, neglect or accident, which shall have been altered or repaired other than by ADP, or its designee, or which has experienced a problem covered by Paragraph 12(D) above.

    C. ADP warrants to Client that, except as provided in Paragraph 11 above, good title to the portion of the Equipment purchased from ADP shall be transferred to Client, free and clear of all liens, claims, encumbrances and security interests whatsoever.

    D. EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES, THE SOFTWARE, THE EQUIPMENT, THE ADDITIONAL EQUIPMENT, THE SUPPORT SERVICES AND/OR THE MAINTENANCE SERVICES INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

15. **LIMITATION OF LIABILITY.**

    A. ADP's sole obligation in case of any breach of its representations and warranties set forth in Paragraph 14 above shall be (i) to use reasonable efforts to correct any Services or Software which is not in compliance with the warranties provided in Paragraph 14(A) above, and/or (ii) to repair or replace, at ADP's option, any defective item of Equipment to the extent set forth in Paragraph 14(B) above.

    B. ADP shall not have any liability under this Agreement and the Schedules hereto for any money damages resulting from claims made by Client or any third party for any and all causes covered by Paragraph 15(A) above. ADP's sole liability under this Agreement and the Schedules hereto for money damages resulting from claims made by Client or any third party arising from or related to any and all causes not covered by Paragraph 15(A) above shall not exceed the lesser of (i) the amount of actual damages incurred by Client, and (ii) the amount which will not exceed one month's average total monthly charges paid by Client for the particular Services, Software, Equipment, Support Services or Maintenance Services as to which Client's claim relates during the twelve months preceding the month in which the damage or injury is alleged to have occurred, or such lesser number of months if Client has not received twelve months of the applicable Services, Software, Equipment, Support Services or Maintenance Services. Such damages shall be the full extent of ADP's monetary liability under this Agreement and the Schedules hereto regardless of the form in which any such legal or equitable claim or action may be asserted against ADP and shall constitute Client's sole monetary remedy.

    C. ADP shall not be liable or deemed to be in default for any delay or failure to perform under this Agreement and the Schedules hereto or for interruption to the Services, Software, Equipment, additional equipment maintained by ADP, Support Services and/or Maintenance Services resulting directly or indirectly from any cause beyond ADP's reasonable control.

    D. As used in Paragraphs 15(A), 15(B) and 15(C) above, the term "ADP" shall be deemed to include each third party who provides ADP with any portion of the Services, Software, Equipment, Support Services or Maintenance Services being provided, or which will be provided to, Client. Such third party shall not have any direct or indirect liability to Client for monetary damage on account of the Services, Software, Equipment, Support Services or Maintenance Services provided, or to be provided, by ADP hereunder.

    E. IN NO EVENT WILL ADP BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH CLIENT MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT AND THE SCHEDULES HERETO, EVEN IF ADP HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

16. **LAWS AND GOVERNMENTAL REGULATIONS.**

    A. Client shall be responsible (i) for compliance with all laws and governmental regulations affecting its business and (ii) for any use it may make of the Services and Software to assist it in complying with such laws and governmental regulations, and ADP shall not have any responsibility relating thereto (including, without limitation, advising Client of Client's responsibilities in complying with any laws or governmental regulations affecting Client's business). While ADP shall not have any responsibility for Client's compliance with the laws and regulations referred to above, ADP agrees to use commercially reasonable efforts to cause the applicable Services and Software to be designed in such a manner that they will be able to assist Client in complying with its applicable legal and regulatory responsibilities; in no event shall Client rely solely on its use of the Services and Software in complying with any laws and governmental regulations.

    B. If after the date hereof any modifications to the Services and Software shall be legally required, ADP shall, except to the extent such changes may be beyond the capability of ADP to implement, modify the Services and Software appropriately. If providing any of the Services and Software to Client hereunder violates, or in ADP's opinion is likely to violate, any laws or governmental regulations, ADP may, upon written notice to Client, immediately cease providing the affected Services and Software to Client.

17. **PROPRIETARY RIGHTS INFRINGEMENT.**

   A. With respect to the Equipment and all Software not developed by ADP, to the extent permitted under ADP's agreements with manufacturers of the Equipment and licensors of the non-ADP developed Software, ADP agrees to pass on to Client the Equipment manufacturers' and non-ADP developed Software licensors' proprietary rights infringement indemnification obligations; provided, however that Client acknowledges that the Equipment manufacturers and non-ADP developed Software licensors shall be fully responsible for the payment of any award under the terms of their agreements with ADP and that ADP shall not have any responsibility relating thereto.

   B. With respect to the Software developed by ADP, ADP warrants that such Software is free from any claim of infringement of any United States patent, copyright, trademark or trade secret. ADP shall indemnify and hold Client harmless from any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any infringement by such Software of any United States patent, copyright, trademark or trade secret of any third party provided that:

      (i) promptly after becoming aware of the existence of any claim or litigation for which indemnity may be sought under this Paragraph 17(B), Client shall give ADP written notice thereof, together with any and all documentation related to such claim or litigation;

      (ii) ADP shall have full control over the defense and settlement of any claim or litigation for which indemnification is sought under this Paragraph 17(B); and

      (iii) Client shall cooperate with ADP in every reasonable way, at ADP's expense, to facilitate the defense or settlement of any such claim or litigation.

   If Client is enjoined or otherwise prohibited from using such Software, ADP shall, at its sole expense and at ADP's option, (x) procure for Client the right to continue using such Software, or (y) substitute a non-infringing version of such Software in a manner satisfactory to Client so that such Software becomes non-infringing and still conforms to its applicable functional and technical specifications.

   C. ADP shall have no liability for any claims of patent, copyright, trademark or trade secret infringement based on Client's use of the Equipment and/or the Software in combination with software, equipment, data or services not supplied by ADP as part of this Agreement and the Schedules hereto (even if the procedures set forth in Paragraph 17.B above have been complied with in connection therewith) or resulting from any modification or attempted modification of such Equipment or Software made by anyone other than ADP, or its designee.

18. **DEFAULT BY CLIENT; REMEDIES UPON DEFAULT.**

   A. Should Client (i) fail to pay when due any sum of money due hereunder or pursuant to any of the Schedules hereof, (ii) default in the performance of any of its other obligations under this Agreement or any of the Schedules hereto, or (iii) become the subject of any proceeding under the Bankruptcy Code or any state bankruptcy law, or become insolvent, or have any substantial part of its property become subject to any levy, seizure, assignment, application or sale for or by any creditor or governmental agency, then, in any such event, ADP, at its option, may, upon written notice thereof, (A) terminate this Agreement and/or any or all of the Schedules hereto, (B) declare all amounts due and to become due under this Agreement (including in particular, Paragraph 18(B) below) and/or any or all of the Schedules hereto immediately due and payable, (C) whether or not this Agreement or a Schedule is terminated, render any Services or portions thereof inoperable and/or inaccessible to Client, and/or take immediate possession of any or all of the Software and items of Equipment not fully paid for, wherever situated, and for such purposes enter upon any premises without liability for so doing, and (D) sell, dispose of, hold, use or lease any items of Equipment not fully paid for, as ADP, in its sole discretion, may decide. Client agrees to reimburse ADP for any and all expenses ADP may incur, including reasonable attorney's fees, in taking any of the foregoing actions. The remedies contained in this Paragraph 18(A) are cumulative and are in addition to all other rights and remedies available to ADP under this Agreement and the Schedules hereto, by operation of law or otherwise.

   B. Client specifically acknowledges and agrees that if Client terminates this Agreement and substantially all then current Schedules or ADP terminates this Agreement due to Client's default pursuant to Paragraph 18(A) above, ADP shall be entitled to recover agreed upon liquidated damages in an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement; (ii) the average applicable monthly charges paid by Client to ADP hereunder for the full months between the commencement date of the applicable Services, Software, Equipment, Support Services and Maintenance Services and their respective dates of termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in the light of the anticipated harm to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy.)

19. **THIRD PARTY LEASING OPTION.**

   Client shall have the option, exercisable by written notice to ADP within a period of ninety (90) days from the date of execution of this Agreement by ADP, to enter into an agreement with a third-party leasing entity (which may be an ADP affiliated leasing entity) to finance the purchase by Client of the purchased Equipment. ADP will, upon direction from Client, accept payment from such third party lessor and upon receipt by ADP of payment from such third-party lessor, all deposit monies paid by Client under this Agreement will either be applied to the purchase of the purchased Equipment or shall be refunded to Client, as applicable. All other obligations of ADP and Client as set forth in this Agreement shall remain in full force and effect; however, ADP's obligations under this Agreement shall run solely to Client.

20. **NON-HIRE.**

During the term of this Agreement, Client shall not solicit the employment of any ADP employee who has been involved in furnishing Services, Software, Equipment, Support Services or Maintenance Services.

21. **GENERAL.**

   A. Client acknowledges that it has not been induced to enter into this Agreement and the Schedules hereto by any representation or warranty not set forth in this Agreement and the Schedules hereto. This Agreement and the Schedules hereto contain the entire agreement of the parties with respect to their subject matter and supersede all existing agreements and all other oral, written or other communications between them concerning their subject matter. This Agreement and the Schedules hereto shall not be modified in any way except by a writing signed by both parties.

   B. Client acknowledges and represents that it owns, and will continue to own throughout the term of this Agreement, at least a 51% interest in capital stock or equity, as applicable, in each and every site where the Software is used. This Agreement and the Schedules hereto (including, without limitation, the Software licenses and sublicenses) may not be assigned by Client, without ADP's prior written consent. This Agreement and the Schedules hereto shall be binding upon and shall inure to the benefit of ADP and Client and their respective successors and permitted assigns.

   C. If any provision of this Agreement and the Schedules hereto (or any portion hereof or thereof) shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement and the Schedules hereto shall not in any way be affected or impaired thereby.

   D. All notices shall be in writing and shall be forwarded by recognized courier, registered or certified mail, and sent to ADP and Client at the addresses set forth on the first page of this Agreement or to any other address designated in writing hereafter. Any notice to ADP shall be sent Attention: President, Dealer Services Group, and shall include a copy to Automatic Data Processing, Inc., One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

   E. The headings in this Agreement and the Schedules hereto are intended for convenience of reference and shall not affect their interpretation.

   F. The individuals executing this Agreement and the Schedules hereto on behalf of ADP and Client each represent and warrant that they are duly authorized by all necessary action to execute this Agreement and the Schedules hereto on behalf of their respective principals.

   G. A breach of any provision of Paragraph 8 or 9 of this Agreement will cause ADP or Client, as the case may be, irreparable injury and damage and therefore may be enjoined through injunctive proceedings in addition to any other rights or remedies which may be available to such party, at law or in equity.

   H. This Agreement and the Schedules hereto shall be governed in all respects by the laws of the State of New Jersey, without giving effect to principles of conflicts of law.

---

**ADP**
APPROVED BY:

_____
(Signature – Authorized Officer)

NAME: _Kenneth Hedick_ (?)
(Type or Print)
TITLE: VP & Assistant General Counsel
(Type or Print)
DATE: 2/24/10

**CLIENT**
APPROVED BY: _[signature]_

_____
(Signature – Authorized Officer)

NAME: _LOUIS A. COHEN_
(Type or Print)
TITLE: _PRES_
(Type or Print)
DATE: 12/23/09

---

**THIS AGREEMENT SHALL BECOME EFFECTIVE UPON BEING SIGNED BY AN AUTHORIZED OFFICER OF BOTH ADP AND CLIENT. ADP MARKETING REPRESENTATIVES DO NOT HAVE THE AUTHORITY TO BIND ADP.**

97076-55